# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

Unite Here Health et al.,

    Plaintiffs

    v.

Craig Gilbert et al.,

    Defendants

Case No.: 2:13-cv-00937-JAD-GWF

**Order Denying Motions to Dismiss [Docs. 5 and 22]**

Plaintiffs are Culinary Union-related employee-benefit trusts that bring this ERISA breach-of-fiduciary-duty action against the principals of Nuthin' Fancy, LLC, the bankrupt operator of the short-lived Lynyrd Skynyrd BBQ and Beer restaurant inside the Excalibur Hotel & Casino, for more than half a million dollars in unpaid benefits allegedly due under the terms of the collective bargaining agreement between the union and the hotel.[1]  These corporate and individual principal-defendants ask the Court to dismiss this case under Federal Rule of Civil Procedure 12(b)(6), arguing that (1) they are not parties to the agreement and cannot be bound by it—and, in fact, their non-party status would have made their payments under the agreement's terms illegal; (2) the "threadbare" complaint fails to allege sufficient facts to state a breach of fiduciary duty claim under ERISA or an alter-ego theory; and (3) this action is barred by the automatic bankruptcy stay related

---

[1] Doc. 1.

to Nuthin' Fancy's Chapter 7 bankruptcy proceeding.[2]  Having thoroughly considered the pleadings, briefing, and the parties' April 11, 2014, oral arguments, the Court is unpersuaded by the Defendants' arguments and denies both motions to dismiss for the reasons below.

**Background**

Plaintiff Unite Here Health is a national union organization that affiliates with local unions Culinary Workers Union, Local 226 and Bartenders Union, Local 165 ("the Unions").[3]  The Unions represent hospitality-industry employees in the hotels and casinos of Las Vegas, Nevada, and they maintain a pension trust known as Southern Nevada Culinary and Bartenders Pension Trust.  Unite Here and the Southern Nevada Pension Trust ("the Trusts") are the plaintiffs in this action.

The Excalibur Hotel & Casino in Las Vegas is owned and operated by New Castle, which executed a collective bargaining agreement ("the CBA") with the Unions.  Nuthin' Fancy is not a party to the CBA.  Nuthin' Fancy did, however, execute a lease agreement with the Excalibur for the Lynyrd Skynyrd BBQ and Beer restaurant in which Nuthin' Fancy agreed to "comply with, adopt the applicable terms and conditions of, and, if required by the terms thereof, take and accept an assignment of and/or become a signature to" the CBA.[4]  The restaurant also agreed that it would "fix the salary rate and provisions of employee benefits" "subject to" the CBA obligations.[5]

Plaintiffs allege that from September 2011 to September 2012, Lynyrd Skynyrd employed workers covered by the CBA and, by operation of the CBA and the lease, Nuthin' Fancy was obligated to (1) submit timely written reports showing employees' identities, hours worked, and compensation, and (2) pay monthly fringe benefits to the Trusts based on the hours worked by or paid to employees under the CBA.  According to the pleadings, Nuthin' Fancy submitted no written

---

[2] Docs. 5, 22.

[3] These facts, which defendants do not appear to contest, are construed in plaintiffs' favor and are drawn from their complaint. *See* Doc. 1 at 1–7.

[4] Doc. 14-3 at 7.

[5] *Id*. at 49–50.

2

reports and made no fringe-benefit payments and now owes the Trusts more than $500,000.[6]

Unite Here Health (through its fiduciary Matthew Walker), and the Pension Trust (through its fiduciary Kim Gould) sue the corporate and individual principals of Nuthin' Fancy,[7] which is currently in Chapter 7 bankruptcy proceedings in the District of Nevada. New Castle, the Excalibur, and Nuthin' Fancy are not parties to this case. Instead, Plaintiffs essentially seek to reach through Nuthin' Fancy's limited-liability-company veil and sue its managers, members, principals, and key employees for breach of fiduciary duty, alleging that they are all "fiduciaries to the Trusts for purposes of ERISA" and breached their fiduciary duties by "failing to make required contributions to the Trusts."[8]

**Discussion**

**A.  Legal Standard**

Federal Rule of Civil Procedure 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." The purpose is to afford defendants fair notice "of what the . . . claim is and the grounds upon which it rests."[9] Defending a complaint against a Rule 12(b)(6) motion to dismiss therefore "requires more than labels and conclusions"; it calls on plaintiffs to plead factual allegations that are "enough to raise a right to relief above the speculative level."[10] This requires a plaintiff to state claims raising a plausible likelihood that the defendant engaged in misconduct for which the law—and courts—can offer relief.

---

[6] Doc. 1 at 4-6.

[7] Defendants Craig Gilbert, Michael Frey, Mathilda Murdock, Benjamin Lutz, Drive This Entertainment! LLC, Drive This! LLC, Eleventeen Enterprises, LLC, and Trifecta Partners, LLC are named as controlling managers, principals, and/or key employees of Nuthin' Fancy. *See* Doc. 1 at 2–3.

[8] *Id*. at 7–8.

[9] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)) (internal quotation marks omitted).

[10] *Id.* (quoting 5 Charles Allen Wright & Arthur R. Miller, Federal Practice and Procedure § 1216 (3d ed. 2004)) (internal quotation marks omitted) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

3

A plaintiff must state its claim with enough facts, which the court takes as true and construes in the light most favorable to the plaintiff, to be plausible on its face.[11] Pleading facts "merely consistent with a defendant's liability" may suggest possible legal liability.[12] It does not rise to the requisite level of plausibility.[13] Bare and unsubstantiated allegations will not suffice; there must be some substance on which courts might find defendants violating the law and thereby grant a legal or equitable remedy. Further, courts need not accept merely conclusory claims, unwarranted factual deductions, or unreasonable inferences.[14] Complaints are only dismissed under Rule 12(b)(6) if, beyond doubt, "the plaintiff can prove no set of facts in support of the claim that would entitle" him to relief.[15]

The general rule for 12(b)(6) motions is that courts may only consider material in the pleadings.[16] When a complaint specifically identifies documents, the authenticity of which is unquestioned by the parties, the court may consider the full text of those documents without converting the motion to dismiss into a motion for summary judgment.[17] The CBA and lease that plaintiffs attach to their opposition to the corporate defendants' motion to dismiss are specifically

---

[11] *See id.* at 556, 570 (requiring complaints to raise a reasonable expectation that discovery will yield evidence of legal violations); *see also Zimmerman v. City of Oakland*, 255 F.3d 734, 737 (9th Cir. 2001).

[12] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)).

[13] *Id.*

[14] *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (citing *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754–55 (9th Cir. 19984)).

[15] *Id.* (citing *Morley v. Walker*, 175 F.3d 756, 759 (9th Cir. 1999)).

[16] *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1550 (9th Cir. 1989) (citations omitted).

[17] *Fecht v. Price Co.*, 70 F.3d 1078, 1080 n.1 (quoting *Branch v. Tunnel*, 14 F.3d 449, 454 (9th Cir. 1994), *overruled on other grounds by Galbraith v. Cnty. of Santa Clara*, 14 F.3d 449 (9th Cir. 2002)).

4

referenced in the complaint and are unchallenged by any party.[18]  While the Court would reach the same decision based on the allegations in the complaint itself, the Court considers the CBA and lease exhibits.  The remaining exhibits are not referenced in the complaint and are not considered here.[19]

**B.     Breach of Fiduciary Duty**

*1.     Walker and Gould's fiduciary standing*

Defendants argue that the unions' fiduciary-breach claim fails because plaintiffs have not alleged who Walker and Gould are, what their fiduciary relationships are, and what actions they "took to ensure concurrence of management and union trustees prior to bringing this lawsuit."[20] Defendants cite an inapposite and unreported District of Nevada case that holds that, as a matter of Nevada state law, there is no fiduciary relationship between a borrower and a lender.[21]

Standing is a threshold issue in any case before a federal district court.  "It is axiomatic that, in addition to those requirements imposed by statute, plaintiffs must also satisfy Article III of the Constitution."[22]  The Ninth Circuit has not directly addressed ERISA's standing requirements.[23]  The Third Circuit's decision in *Horvath v. Keystone Health Plan East, Inc.*, a leading case on ERISA standing, holds that an ERISA plaintiff "need not demonstrate actual harm in order to have standing

---

[18] Doc. 1 (complaint); Docs. 14-1 & 14-2 (CBA); Doc. 14-3 (lease).

[19] Doc. 14-4 (declaration of Wesley J. Smith); Doc. 14-5 (Seventh Amended and Restated Agreement and Declaration of Trust Governing Unite Here Health).

[20] Doc. 5 at 8; Doc. 22 at 9.

[21] Doc. 5 at 7–8; Doc. 22 at 9; *see also Enriquez v. J.P. Morgan Chase Bank, N.A.*, 2:08-cv-01422-RCJ-LRL, 2009 WL 160245 (D. Nev. Jan. 22, 2009).

[22] *Horvath v. Keystone Health Plan E., Inc.*, 333 F.3d 450, 455 (3d Cir. 2003) (citing *Warth v. Seldin*, 422 U.S. 490, 501 (1975)).

[23] *Cf. A.F. ex rel. Legaard v. Providence Health Plan*, — F.R.D. —, 87 Fed. R. Serv. 3d 417 (D. Or. 2013) (citations omitted) (recognizing that "[a]lthough the Ninth Circuit has not yet addressed this specific legal issue, the other circuits that have considered it all agree that 'a plan participant may have Article III standing to obtain injunctive relief related to ERISA's disclosure and fiduciary duty requirements without a showing of individual harm to the participant.'").

1  to seek injunctive relief."[24]  When plaintiffs seek restitution or disgorgement under this statute, they
2  pursue remedies that "are individual in nature and therefore require [them] to demonstrate individual
3  loss."[25]  Yet in *Hovarth*, the plaintiff was an individual beneficiary rather than a union or a pension
4  fiduciary, and *Hovarth* and its progeny are not helpful here.[26]

5       In urging dismissal, defendants contend that plaintiffs must prove their fiduciary standing
6  "[b]efore a breach of fiduciary duty can legally be established."[27]  But on a motion to dismiss, the
7  Court's task is not to finally adjudicate whether a fiduciary breach actually occurred; it is to
8  determine whether a plausible claim for relief is pled and whether defendants have fair notice of
9  claims against them under the *Twombly* and *Iqbal* standards.  That burden is satisfied here.  The
10 plaintiff-trusts are named in the complaint caption and in the body as the parties bringing this
11 action—and Walker and Gould are named as fiduciaries acting on behalf of the pension fund in the
12 caption—so the Court takes as true, on the motion-to-dismiss standard, that the plaintiffs have
13 standing to sue.  If defendants wish to make an evidentiary attack on the individuals' fiduciary
14 standing, that argument is better suited for a summary-judgment motion.

15     ***2.  Piercing the Nuthin' Fancy Veil***

16      The corporate and individual defendants also attack plaintiffs' complaint under the Supreme
17 Court's decision in *Peacock v. Thomas*, arguing that, under 29 U.S.C. § 1132(a)(3), the trustees lack
18 standing "for purposes of piercing the Nuthin' Fancy corporate veil or establishing alter ego
19 status."[28]  *Peacock* stands for the proposition that "[p]iercing the corporate veil is not itself an
20 independent ERISA cause of action, but rather is a means of imposing liability on an underlying

---

[24] *Horvath*, 333 F.3d at 456 (citing *Gillis v. Hoechst Celanese Corp.*, 4 F.3d 1137, 1148 (3d Cir.1993); *Larson v. Northrop Corp.*, 21 F.3d 1164, 1171 (D.C. Cir. 1994); *Financial Inst. Retirement Fund v. Office of Thrift Supervision*, 964 F.2d 142, 149 (2d Cir. 1992)).

[25] *Id.* (citing *In re Unisys Sav. Plan Litig.*, 173 F.3d 145, 159 (3d Cir. 1999)).

[26] *See id.* at 452–53.

[27] Doc. 5 at 7; Doc. 22 at 9.

[28] Doc. 5 at 8; Doc. 22 at 9.

6

cause of action."[29]  Defendants' argument that *Peacock* precludes the instant suit because it is based on an alter-ego theory misreads or overextends *Peacock*'s reach.  The Ninth Circuit cited *Peacock* for the proposition that "a request to pierce the corporate veil is only a means of imposing liability for an underlying cause of action and is not a cause of action in and of itself."[30]  Plaintiffs are not asserting an alter-ego *claim*: they are asserting a breach-of-fiduciary-duty claim and their alter-ego theory is only an additional "means of imposing [fiduciary] liability."[31]  The motions to dismiss therefore cannot succeed on this argument.

### *3.     Corporate and individual defendants' fiduciary duty*

Defendants assert that plaintiffs' fiduciary-breach claim cannot proceed because the plaintiffs "do not even attempt to allege that the [Corporate and Individual] Defendants are proper fiduciary defendants under 29 U.S.C. § 1002(21)."[32]  ERISA limits fiduciary liability "to the extent" qualified defendants exercise discretion under the ERISA statute.[33]  It also "requires a broad definition of fiduciary."[34]  The Ninth Circuit recognizes that "[a] fiduciary is anyone who exercises

---

[29] *Peacock v. Thomas*, 516 U.S. 349, 354 (1996) (quoting 1 C. Keating & G. O'Gradney, *Fletcher Cyclopedia of Law of Private Corporations* § 41, p. 603 (perm. ed.1990)) (internal quotation marks omitted); *cf. Local 159*, 185 F.3d at 985 ("A request to pierce the corporate veil is only a means of imposing liability for an underlying cause of action and is not a cause of action in and of itself.") (citing *Peacock v. Thomas,* 516 U.S. 349, 354 (1996)).

[30] *Local 159, 342, 343 & 444 v. Nor-Cal Plumbing, Inc.*, 185 F.3d 978, 985 (9th Cir. 1999) (citing *Peacock v. Thomas*, 516 U.S. 349, 354 (1996)).

[31] *Cf. Peacock*, 516 U.S. at 354.

[32] Doc. 5 at 8; Doc. 22 at 10.

[33] *Pegram v. Herdrich,* 530 U.S. 211, 225–26 (2000); *Gelardi v. Pertec Computer Corp.*, 761 F.2d 1323, 1324–25 (9th Cir. 1985).  Fiduciary status can be determined on a motion to dismiss.  *Wright v. Or. Metallurgical Corp.*, 360 F.3d 1090, 1097, 1100–01 (9th Cir. 2004).

[34] *See Carpenters*, 125 F.3d at 720 (citing *Credit Managers Ass'n v. Kennesaw Life & Accident Ins. Co.,* 809 F.2d 617, 625 (9th Cir. 1987).

discretionary authority or control respecting the management or administration of an employee benefit plan."[35]

Plaintiffs contend in their opposition papers that the corporate and individual defendants controlled assets due to the Trusts, that these assets were not paid, and that "Defendants were the primary decision makers regarding payment of contributions to the Trusts."[36] Moreover, their complaint alleges that "Controlling Defendants exercised control and made decisions regarding remittance of reports and contributions, or lack thereof, to the Trusts."[37] These allegations satisfy the factual predicate of "discretionary authority, control, or responsibility" that is required by the "broad" language of ERISA, and therefore, the claim survives Rule 12(b)(6) plausibility review.

**C.    Taft-Hartley Writing Requirement**

Defendants next argue that "Plaintiffs fail to allege the existence of any written agreement between a union representing those employees and Nuthin' Fancy."[38] The CBA was signed by union representatives and the Excalibur. Without a CBA signed by Nuthin' Fancy, without other writings demonstrating the restaurant's intent to be bound to the CBA, and without a course of conduct (such as contributions paid) binding it to the CBA, the defendants argue, Nuthin' Fancy had

---

[35] *Arizona State Carpenters Pension Trust Fund v. Citibank*, 125 F.3d 715, 720 (9th Cir. 1997) (quoting *Kyle Rys., Inc. v. Pacific Admin. Serv., Inc.*, 990 F.2d 513, 516 (9th Cir. 1993)) (internal quotation marks omitted). Under the statute, a person or entity is a fiduciary if:

> **(i)** he exercises any discretionary authority or discretionary control respecting management of such plan or . . . its assets,
> **(ii)** he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or
> **(iii)** he has any discretionary authority or discretionary responsibility in the administration of such plan . . .

29 U.S.C. § 1002(21)(A) (defining "fiduciary" for 29 U.S.C. § 1132(21)(A)).

[36] Doc. 14 at 13–14; Doc. 23 at 7–8.

[37] Doc. 1 at 6.

[38] Doc. 5 at 4; Doc. 22 at 5.

8

no obligation to make any pension contributions under the CBA.[39] Defendants characterize plaintiffs' suit as a futile effort use a "third-party lease" to "bind a completely separate entity to a third-party CBA."[40]

The Taft-Hartley Act does not permit an employer to make trust-fund contributions unless the agreement to do so is specified in a writing.[41] The purpose is to establish "the detailed basis on which such payments are to be made."[42] The Ninth Circuit recognizes that "[u]nder the plain words of the statute, *any* written agreement with the employer can establish an employee's eligibility for Trust benefits, so long as it actually specifies, directly or by incorporation, 'the detailed basis' on which contributions are to be made."[43] The writing requirement can be satisfied by a CBA, even if the CBA is expired.[44] The writing also need not be signed where there is "a course of conduct plus a writing."[45] In other words, whether there is a formal contract between plaintiffs and defendants does

---

[39] Doc. 5 at 5–6; Doc. 22 at 7–8.

[40] Doc. 5 at 6; Doc. 22 at 8.

[41] Without a written agreement, "[n]o employer may agree with a union to contribute to a pension plan." *Painters Trust, W. Wash.v. Sandvig-Ostergard, Inc.*, 737 F. Supp. 1131, 1138 (W.D. Wash. 1990) (citations omitted).

[42] 29 U.S.C.A. § 186(c)(5)(B).

[43] *Guthart v. White*, 263 F.3d 1099, 1103–04 (9th Cir. 2001) (quoting 29 U.S.C. § 186(c)(5)(B) (citing *Alaska Trowel Trades Pension Fund v. Lopshire,* 103 F.3d 881, 883 (9th Cir. 1996); *Central States, S.E. and S.W. Areas Pension Fund v. Behnke, Inc.*, 883 F.2d 454, 460 (6th Cir. 1989); *Gariup v. Birchler Ceiling & Interior Co.*, 777 F.2d 370, 376 (7th Cir. 1985); *Hinson v. NLRB*, 428 F.2d 133, 139 (8th Cir. 1970)) (emphasis added).

[44] *Alaska Trowel Trades Pension Fund v. Lopshire*, 103 F.3d 881, 882-83 (9th Cir. 1996) (citing 29 U.S.C. § 186(c)(5)(B); *NLRB v. Carilli*, 648 F.2d 1206, 1214 (9th Cir. 1981)).

[45] *Moriarty v. Larry G. Lewis Funeral Directors Ltd.*, 150 F.3d 773, 777 (7th Cir. 1998) (citing *Gariup v. Birchler Ceiling & Interior Co.*, 777 F.2d 370 (7th Cir.1985)) (writing that "[b]oth § 302(c)(5)(B) and general principles of contract law permit an employer to adopt a collective bargaining agreement by a course of conduct plus a writing such as the certification line on the contribution report; a signature at the bottom of the collective bargaining agreement itself is unnecessary."); *see also Bricklayers Local 21 of Illinois Apprenticeship & Training Program v. Banner Restoration, Inc.*, 385 F.3d 761, 767 (7th Cir. 2004) (citations omitted) (writing that "a signature to a collective bargaining agreement is not a prerequisite to finding an employer bound to that agreement" and describing other factors that "demonstrate conduct manifesting assent to the terms of the CBA."); *see also Nat'l Leadburners Health & Welfare Fund v. O.G. Kelley & Co., Inc.*, 129 F.3d 372, 375 (6th Cir. 1997) (citing *Moglia v. Geoghegan*, 403 F.2d 110, 116 (2d Cir. 1968); *Central States S.E. and S.W. Areas Pension Fund v. Kraftco, Inc.*, 799 F.2d 1098, 1110 (6th Cir. 1986); *Producers Dairy Delivery Co. v.*

not determine whether they have a binding agreement, as long as there are (1) a writing that details the method of benefit payment and (2) conduct demonstrating assent to those detailed terms.[46]

Plaintiffs urge that the CBA is the writing that satisfies 29 U.S.C.A. § 186.[47] Plaintiffs never contend that Nuthin' Fancy signed the CBA; instead, they argue that Nuthin' Fancy's conduct demonstrates that it adopted the CBA and manifested the restauranteurs' intent to be bound by it.[48] Plaintiffs' complaint alleges that, in September 2010, New Castle and Nuthin' Fancy executed a lease for restaurant space inside the Excalibur.[49] They write that "[a]s a term of that Lease, Nuthin' Fancy expressly acknowledged and agreed that [1] its employees must be represented by the Union and that [2] New Castle is a signatory to the CBA and [3] covenanted and agreed that it would at all times comply with and adopt the terms and conditions of the CBA."[50]

---

*W. Conference of Teamsters Pension Trust Fund*, 654 F.2d 625, 627 (9th Cir. 1981)) (finding that "[t]he statute does not specify any signature requirement and the term 'written agreement' is unambiguous in relation to such. The purpose of the 'written agreement' requirement is to ensure that employer contributions are for a proper purpose and that benefits from the fund reach only the proper parties.").

A CBA may require signatures or full execution, by its express terms, in which case courts may enforce a signature requirement. *See Pipefitters Local Union No. 562 v. Best Bet Welding & Fabrication, Inc.*, 766 F. Supp. 761, 764 (E.D. Mo. 1991) (writing that "[t]he terms of the agreement itself expressly state that a signature was necessary in order for an acceptance or adoption of the agreement."). The parties do not argue, however, that the CBA in this case requires signatures.

[46] *See S. Cal. Painters & Allied Trade Dist. Council. No. 36 v. Best Interiors, Inc.*, 359 F.3d 1127, 1133 (9th Cir. 2004) (en banc).

[47] Doc. 23 at 4.

[48] Doc. 23 at 4; Doc. 14 at 11.

[49] Doc. 1 at 4.

[50] Doc. 1 at 4. Plaintiffs also argue that assent was manifest when Nuthin' Fancy hired union employees because the union was "highly involved in the hiring process," and when Nuthin' Fancy permitted audits that examined whether they were in compliance with the CBA pension provisions. Doc. 14 at 12; Doc. 23 at 5. As the Court concludes that the lease theory is plausible and sufficient to permit this claim to survive 12(b)(6) dismissal, the Court does not independently consider the plausibility of this additional theory.

This theory is at least plausibly borne out by the plain language of the lease between New Castle doing business as the Excalibur and Nuthin' Fancy.[51] Section 8.16, subsection A states:

> Tenant hereby covenants and agrees that Tenant shall at all times comply with, adopt the applicable terms and conditions of, and, if required by the terms thereof, take and accept an assignment of an/or become a signature to; as they relate to Tenant's operation of the Premises, all of Landlord's Collective Bargaining Agreements.[52]

Phrased more simply, with respect to restaurant operation in the Exalibur, Nuthin' Fancy adopted all applicable terms and conditions of New Castle's CBAs. Subsection E builds on this agreement:

> Subject to the provisions of sub-paragraph A of this Section 8.16, as it applies to persons or work subject to the Landlord's Collective Bargaining Agreements, Tenant shall, in Tenant's sole discretion, fix the salary rate and provisions of employee benefits of Tenant's employees and shall be responsible for all such salaries, employee benefits . . .[53]

In other words, Nuthin' Fancy was free to determine its employees' salaries and benefits—but, to the extent that Nuthin' Fancy's employees were subject to the CBA, the terms of the CBA governed.[54] Read together, these lease terms support the complaint's allegations that Nuthin' Fancy expressly "agreed that it would at all times comply with and adopt the terms and conditions of the CBA."[55]

The course of conduct relied upon to enforce a writing—particularly where the defendant was not an original party to the CBA—must actually "manifest[] an intention to abide by the terms of the agreement."[56] If a party signs an additional contract that expressly binds it to the terms of the

---

[51] Doc. 14-1 at 8. The Local Joint Executive Board of Las Vegas entered the CBA on behalf of the Culinary and Bartenders unions. *Id.*

[52] Doc. 14-3 at 7.

[53] Doc. 14-3 at 9–10.

[54] The CBA itself provides, in part, that "no work customarily performed by employees covered by this Agreement shall be performed under any sublease, subcontract, or other agreement unless the terms . . . specifically state that . . . all such work shall be performed only by members of the bargaining agreement covered by this Agreement." Doc. 14-2 at 17.

[55] Doc. 1 at 4.

[56] *Id.* (quoting *NLRB v. Haberman Constr. Co.*, 641 F.2d 351, 356 (5th Cir. 1981) (en banc)) (internal quotation marks omitted).

11

CBA—as alleged here—then the plaintiffs can plausibly argue that the detailed-writing requirement is satisfied by the CBA and that the assent-manifesting conduct is supplied by the lease. Plaintiff's complaint thus satisfies the Rule 12(b)(6) standard for plausible pleading to survive dismissal.

## D.     No Bankruptcy Stay Applies

Defendants urge that an automatic bankruptcy stay under 11 U.S.C. § 362 prevents this case from advancing against the principals of Nuthin' Fancy, which is a Chapter 7 debtor, where Nuthin' Fancy alone has filed bankruptcy.[57] The only cases in which courts extend the Section 362 automatic stay to non-debtor entities, however, are those where the claim against non-debtors is brought under an alter-ego theory. If the alter-ego argument is true, the debtor and the entity are regarded as identical.[58] Because a debtor has an equitable interest in its alter ego's assets, an alter-ego claim is the estate's property under 11 U.S.C. § 524.[59] Defendants offer no authority for the proposition that similar protections bar an alleged fiduciary-duty-breach claim where, as here, Plaintiffs allege that the Defendants breached fiduciary duties to the Trusts rather than to the debtor.

---

[57] *See* Doc. 5 at 6–7; Doc. 22 at 8. Defendants' argument begs the question: if the defendants are parties to the bankruptcy proceedings, where they benefit from a stay, why do they not seek the relief they want in bankruptcy court? Nevertheless, this Court addresses their argument on its merits.

[58] *See Trustees of the Const. Indus. & Laborers Health & Welfare Trust v. Vasquez*, 2:09-CV-02231-LRH, 2011 WL 4549228 (D. Nev. Sept. 29, 2011).

[59] *Id.*; *see also In re W. World Funding, Inc.*, 52 B.R. 743, 784 (Bankr. D. Nev. 1985) *aff'd in part, rev'd on other grounds by sub nom. Buchanan v. Henderson*, 131 B.R. 859 (D. Nev. 1990), *rev'd*, 985 F.2d 1021 (9th Cir. 1993) ("a Nevada corporation has an equitable interest in the assets of its alter ego. Therefore, the trustee does not bring this as a chose in action on which the debtor-corporation could have sued outside of bankruptcy; he brings it simply to establish the identity of the alter egos with the corporations in order to determine what are the assets of the estate."); *see also Kalb, Voorhis & Co. v. Am. Fin. Corp.*, 8 F.3d 130, 132 (2d Cir. 1993) (where state law permits alter-ego action, "the bankruptcy trustee or debtor-in-possession has exclusive standing to assert veil-piercing claims on behalf of a bankrupt corporation because such claims are the property of the bankruptcy estate."); *see also In re Folks*, 211 B.R. 378, 386 (B.A.P. 9th Cir. 1997) (recognizing that "[t]he trustee has the right to bring any action in which the debtor has an interest because this is property of the estate, the trustee is acting to benefit the debtor's estate, and is ultimately benefitting the estate's creditors upon distribution.").

Section 524(a)(1) defines "property of the estate" very broadly: "The commencement of a [bankruptcy] case . . . creates an estate. Such estate is comprised of all the following property, wherever located and by whomever held[, as] . . . all legal or equitable interests of the debtor in property as of the commencement of the case."

Defendants also assert that "the Complaint should nonetheless be dismissed because Nuthin' Fancy's lease was subject to discharge through Chapter 7 bankruptcy, and was in fact undisputedly discharged through the bankruptcy court's order converting to Chapter 7 and liquidating assets."[60] But the statutory discharge injunction states: "A discharge under [the Bankruptcy Code] operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived."[61]  It is axiomatic that for the defendants to receive a discharge—and thus to benefit from the discharge injunction—they must be debtors and a court must enter an order discharging them as debtors.  The Nuthin' Fancy bankruptcy is still pending, and not even Nuthin' Fancy has received the benefit of the discharge injunction—let alone its principals.[62]  Even assuming that Nuthin' Fancy receives a discharge in the future, these defendants would not benefit because they are not bankruptcy-proceeding parties who would be covered under such an order.  Nuthin' Fancy's Chapter 7 bankruptcy thus does not provide a basis for dismissal of this case.

**Conclusion**

Accordingly, and with good cause appearing,

**IT IS HEREBY ORDERED** that Defendants Drive This!, Drive This Entertainment!, Trifecta Partners, and Eleventeen Enterprises' Motion to Dismiss **[Doc. 5] is DENIED**.

**IT IS FURTHER ORDERED** that Defendants Craig Gilbert, Michael Frey, Mathilda Murdock, and Benjamin Lutz's Motion to Dismiss **[Doc. 22] is DENIED**.

Dated:   June 4, 2014.

_____
Jennifer A. Dorsey
United States District Judge

---

[60] Doc. 22 at 8.

[61] 11 U.S.C § 524(a)(2).

[62] *See In re Nuthin' Fancy*, No. 12-21022-BTB (Bankr. D. Nev. 2013).

13