1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

Unite Here Health, *et al.*,

         Plaintiffs

v.

Craig Gilbert, *et al.*,

         Defendants

2:13-cv-00937-JAD-GWF

**Order Granting Defendants' Motion for Summary Judgment [ECF 44]; Denying Plaintiffs' Motion for Partial Summary Judgment [ECF 41]; Granting in Part Plaintiffs' Motion to Strike [ECF 51]; and Granting Plaintiffs' Motion for Leave to Respond to Supplemental Authority [ECF 57]**

Plaintiffs are Culinary Union-related employee-benefit trusts that bring this ERISA breach-of-fiduciary-duty action against the principals of Nuthin' Fancy, LLC,[1] the bankrupt operator of the short-lived Lynyrd Skynyrd BBQ and Beer restaurant inside the Excalibur Hotel & Casino.  By this action, the Trusts seek more than half a million dollars in unpaid benefits allegedly due under the terms of the collective bargaining agreement between the union and the hotel.[2]  The Trusts move for partial summary judgment—only as to liability—against all of the defendants on the Trusts' sole cause of action for breach of fiduciary duty under ERISA.[3]  The Principals, on the other hand, move to summarily adjudicate that claim in their favor.[4]

The primary issue in these competing motions is whether unpaid employer contributions to an employee-benefits plan are "plan assets" thus making the persons and entities that control them ERISA fiduciaries.  In *Cline v. Indust. Maint. Engr. & Contracting Co.*, the Ninth Circuit announced the general rule that contributions by employers to an employee-benefits plan are not plan

---

[1] Craig Gilbert, Michael Frey, Mathilda Murdock, Benjamin Lutz, Drive This Entertainment! LLC, Drive This! LLC, Eleventeen Enterprises, LLC, and Trifecta Partners, LLC (Principals).

[2] ECF 1.

[3] ECF 41.

[4] ECF 44.

assets until they are paid to the plan.[5]  The Trusts ask me to apply an exception to the *Cline* rule, which has been recognized in other circuits, that unpaid employer contributions are "plan assets" when the agreement between the fund and the employer specifically and clearly declares that they are.

The Ninth Circuit recently refused to adopt an exception to the *Cline* rule in *Bos v. Board of Trustees*.[6]  Although the *Bos* panel's decision is limited to the bankruptcy context of non-dischargeability of a debt under 11 U.S.C. § 523(a)(4), it provides guidance about whether (and, if so, how) the Ninth Circuit might apply an exception to the *Cline* rule in a purely ERISA context like this one.  With the Ninth Circuit's guidance in *Bos*, and on the facts in this action that are not genuinely in dispute, I see no valid basis for applying an exception to the *Cline* rule.  Accordingly, I deny the Trusts' motion for partial summary judgment [ECF 41], grant the Principals' motion for summary judgment [ECF 44], and enter judgment in favor of the Principals.

The Trusts also move for leave to respond to the supplemental authority (the *Bos* decision) that the Principals submitted after briefing on the parties' competing motions concluded.[7]  That motion has been fully briefed and I grant it.[8]  The Trusts further filed a "Supplement to Opposition to Defendants' Motion for Summary Judgment" asking me to disregard five exhibits that were attached to the Principals' reply in support of their motion for summary judgment,[9] which I treat as a motion to strike under LR 56-1 and grant as to the declaration of Ben Lutz [ECF 50-2] and purported lease between Ramparts, Inc. and Hongos y Hombres, LLC [ECF 50-5], but deny as to the remaining exhibits [ECF 50-1, 50-3, 50-4].

---

[5] *Cline v. Indust.  Maint.  Engr. & Contracting Co.*, 200 F.3d 1223, 1234 (9th Cir. 2000).

[6] *Bos v.  Board of Trustees*, 795 F.3d 1006 (9th Cir. 2015).

[7] ECF 56; ECF 57.

[8] ECF 58; ECF 59.

[9] ECF 51.

**Findings of Fact**

Plaintiffs Unite Here Health ("Welfare Trust") and Southern Nevada Culinary & Bartenders Pension Trust ("Pension Trust") are express trusts created by written declarations of trust, consistent with Section 302(c) of the Labor Management Relations Act (LMRA).[10]  Alicia Hernandez, custodian of records for the Trusts and contribution director for Zenith American Solutions, Inc., which is the third-party administrator for the Trusts,[11] attests that true and correct copies of the trust agreements for the Welfare Trust and Pension Trust are attached as Exhibits 1 and 2 to the Trusts' motion for partial summary judgment.[12]

Relevant to the parties' competing motions is how the Trusts' agreements define what constitutes their respective assets.  Under the article entitled "Plan Assets," the Welfare Trust's agreement provides:

> 5.01    The Fund shall consist of all contributions, monies and other property received:
>
> (1) Pursuant to the provisions of any collective bargaining agreements or participation agreements, acceptable to the Trustees, that require contributions to be made to the Fund[;]
>
> (2) From any other source, so long as the property received may be used by the Trustees in a manner which is consistent with ERISA and with the terms and purposes of this Trust Agreement; or
>
> (3) From any other source, including contributions necessary for an Employer to conform with the Fund's minimum participation requirements, as set forth in the Trust Agreement, the Minimum Standards, and rules and regulations adopted by the Trustees pursuant to the Trust Agreement, so long as the funds and property received may be used by the Trustees in a manner which is consistent with ERISA and with the terms and purposes of this Trust Agreement.
>
> 5.03    Contributions made or required to be made pursuant to a collective bargaining agreement, participation agreement or

---

[10] ECF 1 ¶ 1; 29 U.S.C. § 186.

[11] ECF 41-15 ¶¶ 1–2.

[12] ECF 41-15 ¶¶ 4–5.

other agreement acceptable to the Trustees, or in accordance with the Minimum Standards, are Plan assets, whether or not they are received for collected by the Fund.  By executing a collective bargaining agreement, participation agreement or other agreement requiring contributions to the Fund, the Employer agrees to comply with and be bound by all terms of the Trust Agreement, in its present form and as amended from time to time, and to have ratified (without the necessity of notice) all acts taken or to be taken as well as all rules, regulations, and procedures adopted or to be adopted by the Trustees for the proper administration of the Fund and to carry out their fiduciary duties under ERISA.[13]

On this same topic, the Pension Trust's agreement provides that:

All funds contributed to the Trust by the Employers and all monies, properties, and other things of value which may be contributed to or otherwise become part of the Trust from time to time, together with the income and increment thereof, and all investments made therewith, less disbursements therefrom, shall constitute the trust fund covered by this Trust Agreement (hereinafter called the "Fund").[14]

The Trusts affiliate with local unions Culinary Workers Union, Local 226 and Bartenders Union, Local 165 (the Unions).[15]  The Excalibur Hotel & Casino in Las Vegas is owned and operated by New Castle, which executed a collective bargaining agreement (the CBA) with the Unions.[16] Nuthin' Fancy is not a party to the CBA.[17]  Nuthin' Fancy did, however, execute a lease agreement with the Excalibur for the Lynyrd Skynyrd restaurant in which Nuthin' Fancy agreed to "comply with, adopt the applicable terms and conditions of, and, if required by the terms thereof, take and

---

[13] ECF 41-1 at 12–13 §§ 5.01, 5.03.

[14] ECF 41-2 at 6 § 1.01.

[15] ECF 1 ¶ 3.

[16] ECF 41 at 4 ¶ 3.

[17] ECF 41 at 4 ¶ 3; ECF 41-5 ¶ 6; ECF 41-3 at 95–104.

accept an assignment of and/or become a signature to" the CBA.[18]  The restaurant also agreed that it would "fix the salary rate and provisions of employee benefits" "subject to" the CBA obligations.[19]

The Trusts argue that from September 2011 to September 2012, Lynyrd Skynyrd employed workers covered by the CBA and, by operation of the CBA and the lease, Nuthin' Fancy was obligated to (1) submit timely written reports showing employees' identities, hours worked, and compensation, and (2) pay monthly fringe benefits to the Trusts based on the hours worked by or paid to employees under the CBA.  It is undisputed that Nuthin' Fancy submitted no written reports and made no fringe-benefit payments.

The Welfare Trust and the Pension Trust sue the corporate and individual principals of Nuthin' Fancy, which is currently in Chapter 7 bankruptcy proceedings in the District of Nevada. New Castle, the Excalibur, and Nuthin' Fancy are not parties to this case.  Instead, the Trusts seek to reach through Nuthin' Fancy's limited-liability-company veil and sue its managers, members, principals, and key employees for breach of fiduciary duty, arguing that they are all fiduciaries for ERISA purposes and breached their fiduciary duties by failing to make required contributions to the Trusts.[20]

## Discussion

### I.      Competing Motions for Summary Judgment

#### A.      Summary Judgment Standard

Summary judgment is appropriate when the pleadings and admissible evidence "show there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."[21]  When considering summary judgment, the court views all facts and draws all inferences in the light most favorable to the nonmoving party.[22]  If reasonable minds could differ on material facts,

---

[18] ECF 41 at 7 ¶¶ 11–13; ECF 41-14 ¶ 12; ECF 41-8 at 50–51.

[19] ECF 41-8 at 52–54.

[20] *See generally* ECF 41.

[21] *See Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986) (citing FED. R. CIV. PROC. 56(c)).

[22] *Kaiser Cement Corp. v. Fishbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986).

1   summary judgment is inappropriate because its purpose is to avoid unnecessary trials when the facts

2   are undisputed, and the case must then proceed to the trier of fact.[23]

3        If the moving party satisfies Rule 56 by demonstrating the absence of any genuine issue of

4   material fact, the burden shifts to the party resisting summary judgment to "set forth specific facts

5   showing that there is a genuine issue for trial."[24]   The nonmoving party "must do more than simply

6   show that there is some metaphysical doubt as to the material facts"; he "must produce specific

7   evidence, through affidavits or admissible discovery material, to show that" there is a sufficient

8   evidentiary basis on which a reasonable fact finder could find in her favor.[25]   Rule 56(e) provides,

9   "[i]f a party . . . fails to properly address another party's assertion of fact as required by Rule 56(c),

10  the court may: (2) consider the fact undisputed for purposes of the motion; [or] (3) grant summary

11  judgment if the motion and supporting materials—including the facts considered undisputed—show

12  that the movant is entitled to it. . . . "

13       A party must support or refute an assertion of a fact with admissible evidence.[26]   The

14  summary-judgment procedure is the pretrial equivalent of a directed-verdict motion, so it

15  "necessarily implicates the substantive evidentiary standard of proof that would apply at the trial on

16  the merits."[27]   Litigants cannot, therefore, merely attach documents to a summary-judgment motion

17  or response without affirmatively demonstrating authenticity of the documents.

18

19

20

21

22
---

23  [23] *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995); *see also Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994).

24  [24] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *Celotex*, 477 U.S. at 323.

25  [25] *Orr v. Bank of America, NT & SA*, 285 F.3d 764, 783 (9th Cir. 2002) (internal citations omitted); *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991); *Anderson,* 477 U.S. at 248–49.

26

27  [26] FED. R. CIV. PROC. 56(c)(1).

28  [27] *Anderson*, 477 U.S. at 252.

**B.     I grant the Principals' motion for summary judgment in their favor and deny the Trusts' motion for partial summary judgment on liability because the Principals do not qualify as ERISA fiduciaries.**

Under ERISA, "[a]ny person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each breach. . . ."[28] ERISA defines a fiduciary as a person who exercises discretionary authority or control over the management of the plan or the plan's assets.[29] But "ERISA does not expressly define the term 'assets of the plan[,]' nor has th[e Ninth C]ircuit had occasion to delineate the precise boundaries of the term as it is used in" the act.[30] The Ninth Circuit has instructed, however, that "a plain interpretation of the term does not encompass future contributions not yet made."[31]

Key to the parties' motions is whether an employer's contractual requirement to contribute to an employee-benefits plan makes it a fiduciary of unpaid contributions, i.e, whether those are "plan assets" under ERISA. The Ninth Circuit announced the general rule in *Cline*: "Until the employer pays the employer contributions over to the plan, the contributions do not become plan assets over which fiduciaries of the plan have a fiduciary obligation; this is true even where the employer is also a fiduciary of the plan."[32] The Trusts want me to adopt an exception to the *Cline* rule that has been recognized in other circuits[33] but never by the Ninth Circuit, that unpaid employer contributions are assets of a fund if the agreement between the fund and the employer specifically and clearly declares

---

[28] 29 U.S.C. § 1109(a).

[29] *See* 29 U.S.C. § 1002(21)(A).

[30] *Acosta v. Pacific Enter.*, 950 F.2d 611, 620 (9th Cir. 1991).

[31] *Collins v. Pension and Ins. Comm. of So. Cal. Rock Prods. and Ready Mixed Concrete Assns.*, 144 F.3d 1279, 1282 (9th Cir. 1998).

[32] *Cline*, 200 F.3d at 1234 (citing *Local Union 2134, United Mine Workers v. Powhatan Fuel, Inc.*, 828 F.2d 710, 714 (11th Cir. 1987) and *Prof. Helicopter Pilots Assn. v. Denison*, 804 F. Supp. 1447, 1453–54 (M.D. Ala. 1992)).

[33] *See* ECF 41 at 24–41.

1    that they are.[34]  The net effect of this exception would be to give the plan a constructive trust over

2    money in the employer's pocket.[35]

3           The Eleventh Circuit recognized this exception in *ITPE Pension Fund v. Hall*[36] but did not

4    apply it because the agreement was too ambiguous to hold the employer's principals accountable.

5    The *Hall* court reasoned, "A person should not be attributed fiduciary status under ERISA and held

6    accountable for performance of the strict responsibilities required of him in that rule, if he is not

7    clearly aware of his status as a fiduciary. . . ."[37]  The rationale, as the *Hall* court explained, is that:

8             If ERISA did not limit the definition of fiduciaries to those with
              knowledge of their authority and discretion, then persons or entities
9             could become subject to fiduciary liability without notice.  Such a
              result would not only be unfair, but it would also disserve a core
10            purpose of ERISA, which is to create a system whereby accountable
              fiduciaries are motivated by their accountability to protect the interests
11            of participants in ERISA plans.[38]

12           The Ninth Circuit was recently tasked in *Bos* with deciding "whether an employer's

13   contractual requirement to contribute to an employee benefits trust fund makes it a fiduciary of

14   unpaid contributions."[39]  The Principals argue that *Bos*, which is limited to the bankruptcy context of

15   non-dischargeability of a debt under 11 U.S.C. § 523(a)(4),[40] shows that the Ninth Circuit does not

16   _____

17   [34] *See ITPE Pension Fund v. Hall*, 334 F.3d 1011, 1013–14 (11th Cir. 2003) (collecting cases).

18   [35] *Id.* at 1014 (explaining that "The effect of language that makes unpaid contributions assets of the
19   fund is that 'when a corporation is delinquent in its contributions, the fund has a sufficient priority
     on the corporation's available resources that individuals controlling corporate resources are
20   controlling fund assets.'" (quoting *NYSA-ILA Med. & Clinical Servs. Fund v. Catucci ex rel. Capo*,
     60 F. Supp. 2d 194, 201 (S.D.N.Y. 1999) (collecting cases))).
21

22   [36] *ITPE Pension Fund v. Hall*, 334 F.3d 1011 (11th Cir. 2003).

23   [37] *Id.*

24   [38] *Id.* (quoting *Herman v. Nationsbank Trust Co. (Georgia)*, 126 F.3d 1345, 1366 (11th Cir.
25   1997)).

26   [39] *Bos*, 795 F.3d at 1007.

27   [40] "Section 523(a)(4) of the Bankruptcy Code provides that Chapter 7 debtors may not discharge
     debts incurred due to the debtor's 'fraud or defalcation while acting in a fiduciary capacity;
28   embezzlement; or larceny.'" *Bos*, 795 F.3d at 1008 (quoting 11 U.S.C. § 523(a)(4)).  "For a debt to

recognize this exception to the *Cline* rule in any context.[41]   The Trusts disagree, arguing that the *Bos*

court merely declined to recognize an exception to the *Cline* rule in the bankruptcy context of non-

dischargeability of a debt under 11 U.S.C. § 523(a)(4).[42]

Although the *Bos* panel opened its opinion with a broad question presented, the effect of its

opinion is limited by the context in which it was rendered and the narrow issue presented for appeal:

the non-dischargeability of a debt under 11 U.S.C. § 523(a)(4).[43]   *Bos* does, however, provide

guidance about whether—and, if so, how—the Ninth Circuit might apply an exception to the *Cline*

rule in a purely ERISA context.   *Bos* suggests that the Ninth Circuit would apply a narrow

construction to fiduciary status[44] and would classify the asset as either (1) a contractual right to

collect payments once they become due or (2) unpaid past-due contributions.[45]

If employer contributions are classified as a contractual right to collect payments once they

become due, these defendants cannot qualify as fiduciaries.   Like in *Bos*, they are principals of "a

typical employer" and they "lack the requisite control over such plan asset[,]"[46] thus they "could not

---

be held nondischargeable under § 523(a)(4)'s defalcation provision, the debtor must have been a
fiduciary prior to his commission of the fraud or defalcation." *Id.* (citing *Blyler v. Hemmeter*, 242
F.3d 1186, 1190 (9th Cir. 2001)).

[41] *See generally* ECF 56; ECF 58.  *Bos* was decided after briefing concluded on the parties'
competing motions for summary judgment.  But the parties filed supplemental briefs addressing
what impact, if any, that decision has on their respective motions.

[42] *See generally* ECF 57; ECF 59.

[43] *Bos*, 795 F.3d at 1008.

[44] *Id.* at 1011 (citing *Cal-Micro, Inc. v. Cantrell*, 329 F.3d 1119, 1125 (9th Cir. 2003) and *Hall*, 334
F.3d at 1015) (agreeing "with the view taken by the Sixth and Tenth Circuits" and finding that it
"comports with the limited approach we take in recognizing fiduciary status, particularly in the §
523(a)(4) context").

[45] *Id.* at 1011–12.

[46] It is not argued and no evidence has been submitted showing that any of the Principals or the
Nuthin' Fancy employer had authority to enforce the Trusts' contractual rights.

1    qualify as a fiduciary for purposes of . . . ERISA. . . ."[47]  But even if the asset is classified as unpaid

2    past-due contributions, the exception still would not qualify these principals as fiduciaries.  The

3    language of these Trusts' agreements, like in *Hall*, are not sufficiently clear for me to justify applying

4    the exception to the *Cline* rule that has been recognized by other courts.  Thus the *Cline* rule applies,

5    and the Principals are not subject to fiduciary liability under ERISA.

6                 *1.       Terminology used in the Pension Trust's agreement is vague.*

7          The Pension Trust's agreement defines plan assets as "All funds **contributed** to the Trust by

8    the Employers and all monies, properties, and other things of value **which may be contributed** to or

9    otherwise become part of the Trust from time to time. . . ."[48]  The courts in the cases cited by the

10    Trusts were faced with agreements that contained variants on the terminology "required to be made"

11    or "shall be paid[,]"[49] materially differentiating those agreements from this one.  I find that "funds

12    contribut**ed**" or "monies, properties, and other things of value **may be** contributed" does not

13    specifically and clearly declare that unpaid contributions are assets of the Pension Trust's fund.[50]

14    The Trusts argue the agreement later provides that the Trustees have the power "to begin, maintain,

15    or defend any litigation in connection with the administration of the Trust and the Plan or assets

16    thereof, and any litigation with respect to contributions payable to the Fund[,]" that "regular and

17    prompt payment of Employer contributions . . . is essential to the maintenance of the Pension

18    Plan[,]" and that "beneficiaries under the Plan are entitled to pension benefits . . . even though

19    contributions have not been paid on their behalf by their Employer."[51]  But these provisions do not

20    make it specific and clear that unpaid contributions are considered assets of the Pension Trust's fund.

21                 *2.       Terminology used in the Welfare Trust's agreement is similarly ambiguous.*

22          The language used in § 5.03 of the Welfare Trust's agreement does fall within the category of

---

[47] *Bos*, 795 F.3d at 1011.

[48] ECF 41-2 at 6 § 1.01 (emphasis added).

[49] *See e.g. ECF 41 at 25 (collecting authorities); ECF 49 at 8–9 (same).

[50] *See Hall*, 334 F.3d at 1013–14.

[51] ECF 41 at 24–25 (quoting ECF 41-2 at 11 § 3.01(f), 49 § 5.03(d)).

terminology other courts have found to be sufficiently specific and clear: "[c]ontributions made or **required to be made** pursuant to a collective bargaining agreement, participation agreement or other agreement acceptable to the Trustees . . . **are Plan assets whether or not they are received or collected** by the Fund."[52]   Defendants point out, however, that the Welfare Trust's agreement states earlier in § 5.01 that "The Fund shall consist of all contributions, monies and other property **received** . . . [p]ursuant to the provisions of any collective bargaining agreements or participation agreements, acceptable to the Trustees, that require contributions to be made to the Fund."[53]   Sections 5.01 and 5.03 of the Welfare Trust's agreement, defendants argue, are thus inconsistent and contradictory.[54] The Trusts reply that the two sections are consistent because § 5.01 defines the "Fund" while § 5.03 describes "Plan assets."[55]   "Plan assets" is not a defined term in the Welfare Trust's agreement.   The "Fund" and "Plan" are defined; but those definitions do little to alleviate the ambiguity that occurs when §§ 5.01 and 5.03 are read together.

The Welfare Trust's agreement defines "Fund" to "mean the trust fund established for the purposes of providing benefits consistent with Section 302(c)(5) of the LMRA, and . . . shall also include any trust funds, established for similar purposes which have consolidated, pooled, or merged their assets with, or transferred their assets to, this Fund."[56]   However, it defines "Plan" to "mean the benefits programs established and maintained by the Trustees for the payment of medical, hospital care, dental, compensation for illness or injury, life insurance, disability and sickness benefits, death benefits and/or other health and welfare benefits from the Fund consistent with the purposes set forth in Section 302(c)(5) of the LMRA."[57]   On its face, the Welfare Trust's agreement appears to state that unpaid employer contributions are assets of "the benefits programs established and maintained

---

[52] ECF 41-1 at 13 § 5.03 (emphasis added).

[53] ECF 48 at 7–8 (emphasis added) (quoting ECF 41-1 at 12 § 5.01).

[54] ECF 48 at 7–8.

[55] ECF 49 at 9.

[56] ECF 41-1 at 7 § 1.06.

[57] ECF 41-1 at 7 § 1.07.

by the Trustees" (the "Plan"), but not of the "Fund" that was "established for the purposes of providing benefits" under those programs. This could be interpreted as either a distinction without a difference or a distinction with a substantive difference—one that classifies unpaid employer contributions as assets of employee health and welfare programs but not of the fund that was established to endow those programs. Either interpretation is reasonable. I therefore find that the Welfare Trust's agreement is facially ambiguous as to whether unpaid employer contributions are "plan assets" under ERISA.

### 3. Existence of an agreement between the Trusts and the employer

Taking this action further outside of situations where courts have recognized an exception to the *Cline* rule is evidence in the record showing that the Principals and Nuthin' Fancy did not understand that they were required to make contributions on behalf of Lynrd Skynrd's covered employees until after a memorandum of agreement or understanding (MOA) was in place with the Unions. Defendant Michael Frey, manager or member of several of the defendant entities, testified that, consistent with his prior experience with the Rhumbar and Tacos & Tequila properties, he understood that Nuthin' Fancy would be bound to comply with the contribution terms of the CBA "once the rates had been agreed to and memorialized by an MOA" concerning Lynrd Skynrd.[58] Defendant Craig Gilbert, manager or member of several of the defendant entities, likewise testified that, similar to his experience with Rhumbar and Tacos & Tequila, Nuthin' Fancy would have to make contributions for the covered employees of Lynrd Skynrd only after an MOA was in place with the Unions.[59] Exhibit Q to the CBA provides that MOAs had been reached between the Unions and other food and beverage outlets operating on New Castle's property.[60] Although not made exhibits therein or recognized by the deponent, the MOAs for Rhumbar and Tacos & Tequila operations were

---

[58] ECF 41-5 at 81:21–87:01 (pages and lines referenced are of the deposition transcripts).

[59] ECF 41-6 at 55:05–76:19.

[60] *See* ECF 41-3 at 96.

1   discussed and identified by Bates number (Culinary Trust 0702, 0726) in Frey's deposition.[61]

2   Defendants attached a copy of these MOAs as Exhibit C to their reply, which Gilbert attests are true

3   and correct copies.[62]  These MOAs and their meaning was discussed at length with Gilbert in his

4   deposition, which the Trusts submitted in support of their motion for partial summary judgment.[63]

5          The only evidence that the Trusts provide to rebut the Principals' understanding that an MOA

6   was needed before contributions would need to be made on behalf of Lynrd Skynrd's covered

7   employees are the provisions in the lease providing that Nuthin' Fancy agreed to "comply with,

8   adopt the applicable terms and conditions of, and, if required by the terms thereof, take and accept an

9   assignment of and/or become a signature to" the CBA.[64]  The restaurant also agreed that it would "fix

10  the salary rate and provisions of employee benefits" "subject to" the CBA obligations.[65]  The absence

11  of any declaration, affidavit, deposition testimony, or written discovery response on behalf of either

12  the Unions, New Castle, or the Trusts leads me to conclude that parties' course of conduct was

13  consistent with the Principals' understanding: contributions would be made only *after* an MOA was

14  in place with the Unions.

15         Like the Eleventh Circuit in *Hall*, I thus "conclude that it would be unfair for [me] to now

16  apply principles of contract construction to decide that . . . [unpaid employer] contributions are

17  indeed assets [of the Welfare Trust and Pension Trust] and that personal liability is appropriate for

18  those with control over those newly clarified assets."[66]  While I too "appreciate that ERISA is a

19  remedial statute deserving of broad construction,"[67] I

20  _____

21  [61] *See* ECF 41-5 at 87:23–90:12.  Tacos & Tequila is the business name for Hongos y Hombres.
    *See* 41-5 at 15:10–19.

22

23  [62] ECF 50-1 ¶ 3; ECF 50-3 at 2.

24  [63] *See e.g.* ECF 41-6 at 90:19–92:13, 59:10–13.

25  [64] ECF 41 at 7 ¶¶ 11–13; ECF 41-14 ¶ 12; ECF 41-8 at 50–51.

26  [65] ECF 41-8 at 52–54.

27  [66] *Hall*, 334 F.3d at 1015.

28  [67] *Id.* (citing *Teamsters Joint Council No. 83 v. Centra, Inc.*, 947 F.2d 115, 123 (4th Cir. 1991).

cannot employ this broad construction to render ambiguous contractual language clear, and without clear contractual language it is improper to impute fiduciary responsibility.  Preservation of the purposes of ERISA does not require that [courts] ambush corporate officers with stringent fiduciary duties and personal liability based on convoluted contractual language that requires a court to parse and interpret.[68]

As the *Hall* court further recognized, "[w]hen contractual language is facially ambiguous and not anchored by the clear, shared intent of the parties, then fiduciary responsibility under ERISA predicated on [that] language is improper."[69]  I therefore decline to apply an exception to the *Cline* rule here, and I find that defendants do not qualify as fiduciaries for ERISA purposes as a matter of law.  I deny the remainder of the parties' arguments as moot in light of this decision and finding.  Accordingly, I deny the Trusts' motion for partial summary judgment as to liability and grant the Principals' motion for summary judgment in their favor.

## II.     Motion to Strike Exhibits Provided in Reply

The Trusts ask me to disregard five exhibits that were attached for the first time to the Principals' reply in support of their motion for summary judgment.[70]  LR 56-1 provides that "the particular portions of any pleading, affidavit, deposition, interrogatory, answer, admission, or other evidence upon which the party relies" must be set forth in either the "[m]otions for summary judgment" or "responses thereto."  District courts in general should not consider new evidence presented in a reply without first giving the non-movant an opportunity to respond.[71]  "Evidence is not new, however, if it is submitted in direct response to proof adduced in opposition to a motion."[72]

The exhibit at ECF 50-2 is the declaration of Ben Lutz under 28 U.S.C. § 1746.  The exhibit at ECF 50-5 purports to be a lease between Ramparts, Inc. and Hongos y Hombres, LLC.  The first

---

[68] *Id.* at 1015–16.

[69] *Id.* at 1016.

[70] ECF 51.

[71] *Provenz v. Miller*, 102 F.3d 1478, 1483 (9th Cir. 1996).

[72] *Edwards v. Toys "R" Us*, 527 F. Supp. 2d 1197, 1205 n. 31 (C.D. Cal. 2007) (citing *Terrell v. Contra Costa County*, 232 Fed.Appx. 626, 629 n. 2 (9th Cir. Apr. 16, 2007)).

time these exhibits appeared in the record was when they were attached to the Principals' reply in support of their motion for summary judgment, which was the last-in-time-filed, substantive brief by the parties' on their competing motions for summary judgment.  I therefore grant the Trusts' motion as to the exhibits at ECF 50-2 and ECF 50-5.[73]

The exhibit at ECF 50-1 is the declaration of Craig Gilbert under 28 U.S.C. § 1746.  The exhibit at ECF 50-3 consists of the MOAs for the Rhumba and Hongos y Hombres operations.  The first time these exhibits appeared in the record was when they were attached to the Principals' reply in support of their motion for summary judgment.  But much of the information Gilbert attests to in his declaration [ECF 50-1] he testified to in his deposition, which plaintiffs attached to their motion for partial summary judgment.[74]  Moreover, some portions of Gilbert's declaration directly respond to points that the Trusts made in their response to the Principals' motion for summary judgment, e.g., "[p]laintiffs are well aware of these MOA's [sic] and actually produced them during the litigation . . . . *See* 'Culinary Trusts' Bate Stamps on each document."[75]  Further, the MOAs for Rhumbar and Tacos & Tequila operations [ECF 50-3] were discussed and identified by Bates number (Culinary Trust 0702, 0726) in Frey's deposition,[76] which the Trusts attached to their motion for partial summary judgment,[77] and also by Gilbert in his deposition.[78]  Finally, the exhibit at ECF 50-4 consists of audit letters that appear to be identical to the audit letters (minus several pages) that the Trusts attached to their motion for partial summary judgment.[79]  Accordingly, I deny the Trusts' motion as to the exhibits at ECF 50-1, ECF 50-3 and ECF 50-4.

---

[73] *See Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007) (district court has discretion to ignore new arguments raised in reply brief).

[74] *Compare* ECF 50-1 *with* ECF 41-6.

[75] ECF 50-1 ¶ 3.

[76] *See* ECF 41-5 at 87:23–90:12.

[77] ECF 41-5.

[78] *See e.g.* ECF 41-6 at 90:19–92:13, 59:10–13.

[79] *Compare* ECF 50-4 *with* ECF 41-11.

**III.    Motion for Leave to Respond to Supplemental Authority**

Finally, the Trusts move for leave to respond to the Principals' supplemental authority (the *Bos* decision).  When a higher court issues new and controlling authority after briefing is complete, district courts generally request further briefing from the parties addressing it.  The parties beat me to the punch with the Ninth Circuit's decision in *Bos*.  Accordingly, I grant nunc pro tunc the Trusts' request for leave to respond to *Bos*.

<b>Conclusion</b>

Accordingly, with good cause appearing and no reason to delay, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that defendants Craig Gilbert, Michael Frey, Mathilda Murdock, Benjamin Lutz, Drive This Entertainment! LLC, Drive This! LLC, Eleventeen Enterprises, LLC, and Trifecta Partners, LLC's motion for summary judgment **[ECF 44] is GRANTED**.

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that plaintiffs Unite Here Health and Southern Nevada Culinary & Bartenders Pension Trust's motion for partial summary judgment **[ECF 41] is DENIED**.

IT IS FURTHER ORDERED that plaintiffs Unite Here Health and Southern Nevada Culinary & Bartenders Pension Trust's motion to strike exhibits submitted in reply **[ECF 51] is GRANTED as to the exhibits at ECF 50-2 and ECF 50-5 and DENIED as to the exhibits at ECF 50-1, 50-3 and 50-4.  The Clerk of Court is instructed to strike ECF 50-2 and ECF 50-5 from the record in this case.**

IT IS FURTHER ORDERED that plaintiffs Unite Here Health and Southern Nevada Culinary & Bartenders Pension Trust's motion for leave to respond to supplemental authority **[ECF 57] is GRANTED**.

The Clerk of Court is instructed to enter final judgment in favor of defendants Craig Gilbert, Michael Frey, Mathilda Murdock, Benjamin Lutz, Drive This Entertainment! LLC, Drive This! LLC, Eleventeen Enterprises, LLC, and Trifecta Partners, LLC and to close this case.

Dated this 30th day of September, 2015

_____
Jennifer A. Dorsey
United States District Judge